The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having the manner and form of business for the Honorable of the United States Court of Appeals for the Fourth Circuit are admitted to draw now and give their attention. For the Court is now sitting. Godspeed to the United States and His Honorable Court. Thank you. Good morning. Welcome to the Fourth Circuit. Please be seated. So we have a number of novelties here in this first case. So the first one we've had where the judges are here, but the lawyers aren't. And I had the privilege last time to sit with Judge Motz, and she was there last time to preside. And now that she's moved on to different things, it's odd that she's not presiding and they're stuck with me. And so with that, we'll move to our first case, 2020-52, Westfield Insurance Company versus Sisterfield Tank Works and some other folks. Mr. Kessler, which one are you? All right. May it please the Court, Your Honor. My name is Brent Kessler. I represent Westfield Insurance Company. The present appeal arises from a declaratory action initiated by Westfield in 2018, initially addressing four state court actions filed against Sisterfield Tank Works. One of those actions, the Sandy case, was voluntarily dismissed when it became clear that the claims arose prior to Sisterfield Tank Works beginning operations in 1984. The remaining three cases, which are at issue here on this appeal, are the Edwards, Price, and Steele cases. Each of those involved claims related to alleged exposure to benzene or other chemicals while the claimants were employed at various facilities in Marshall County, West Virginia, during years ranging from 1960 to as late as 2006. Counsel, each of the other people is going to be familiar with the facts and the prior proceedings. So in order to conserve your time, you might want to go directly to telling us why there's error here. Your Honor, this report erred to begin by electing to, or declining actually, to address the policies of insurance that were raised and noted in the declaratory action. Westfield's declaratory action addressed a CGL policy that was enforced from 1989 to 2010 and a separate claims made policy enforced from 1989 to 2001. The CGL policy expressly excludes product-completed operations coverage, and Sisterfield Tank Works purchased that product-completed operations coverage separately, either under the policy issued by Westfield from 1989 to 2001, or after that date from another carrier. Westfield raised those policies in its declaratory action because those were the only policies available to Westfield that it had access to. As early as 2010, Westfield had notified Sisterfield Tank Works in writing that it could not locate any Sisterfield Tank Works policies in place before 1989. But what about, weren't there policies that were unveiled before 1989 during discovery? About almost a year into discovery and the pending declaratory action, Sisterfield Tank Works undertook the investigation and search of its own records that Westfield had requested be done back as early as 2010, and located portions of a 1988 to 89 CGL policy and portions of a 1988 to 89 excessor umbrella policy. Could the district court consider those policies to determine coverage? Well, the court did that and actually found coverage under those policies. Sisterfield Tank Works had filed a motion and was granted leave to amend its counterclaim to address and raise for declaratory relief those other policies. They were not in the case up to that point. So the district court, to follow Judge Wynn, the district court considered those policies either under the claim sheet or parts of the policy. So why don't you tell us why the district court made an error there? Well, in addressing those policies, and also relevant to the other policies the district court did not address, the district court predicted that the West Virginia Supreme Court would adopt a continuous trigger for coverage. In reaching that conclusion, the court relied on the cases that had been cited by Sisterfield Tank Works, which are distinguishable. Those two cases, the Wheeling-Pittsburgh case and the U.S. Silica case, were cases where in each instance, Wheeling-Pittsburgh, for example, dealt with a contamination, environmental contamination case, where the court specifically noticed or noted that the property was continuously and progressively damaged as soon as the contamination began. Let me understand. You seem to have moved away from the question of policies more now to the type of coverage that might exist, where there's a latent type situation here of whether it's continuous or manifestation. As the theory to employ, district court, as you say, went with the continuous one. And so at this point, we are looking at West Virginia law, trying to discern how it would go. And the district court looked at two, I guess, trial court opinions from West Virginia. And so that's what you are now discussing. Is that right? That's correct. In response to the question, yes. I think we should follow, or those opinions are informative on this. And going back to Judge Ager's question, how did the district court error? Because both of those cases did use a continuous coverage theory. And even though one dealt with property, the other seemed to more deal with bodily injury. And I will also say this in your answer, that even the one that dealt with property cited cases that were supported that dealt with bodily injury. So why is that much more, not more informative than, I would say, even the district court case came from the federal district court that was predicting. Why wouldn't we rely on those more so than some other theory? Well, because as I noted in the Wheeling-Pittsburgh case, there was evidence before the court in that case that there was damage from the start of the contamination. So there was evidence before the court of damage that would apply to result in a continuous trigger under each policy term. In U.S. Silica, the court relied heavily on Pennsylvania decisions. You're saying that even if a state has a manifestation theory, you can nonetheless have a case where evidence would permit an occurrence-based policy to kick in. Correct. Exactly. Because in that instance, it's a continuous trigger because there's continuous manifestation. In U.S. Silica, the court noted specifically the scientific evidence that was before it that there is injury that starts immediately upon exposure to silica dust. We don't have that evidence. At least one of your arguments was that you wanted us to certify this to the West Virginia Supreme Court of Appeals because there were conflicts between the state trial courts and the West Virginia district courts on which theory to use. Is that an argument you're wanting us to consider? It is an argument we want you to consider because we believe this is a critically important issue. We referred the district court to two federal decisions that predicted that the Supreme Court would apply the manifestation doctrine. I believe those are the ones that carry the weight here. Counsel, you're the plaintiff here, right? Yes. You initiated this case in federal court, right? We did, yes. If you think state court is the place to have it discussed, why didn't you initiate it in state court? The state actions were in multiple proceedings. In order to bring all the issues together into a single proceeding, it was most efficient to do that through a single declaratory action, which we filed in federal court. But if we send it back to state court for resolution of this, have you lost this convenience that you had in bringing it to federal court? No, we still brought all the underlying actions into a single proceeding for purposes of coverage, as opposed to having to intervene separately in what was initially four actions ultimately became three. Excuse me, why couldn't you have done that in state court? I don't understand. It would have been a more cumbersome proceeding, I believe, in state court, because in that situation, if we're going to file state court action, we would have needed to intervene, I think, in at least one and probably all of the state court actions. If we had only intervened in one, it's difficult to imagine how we could have pulled the other claimants from the other unattached state actions into that proceeding for purposes of the coverage. Well, did you ask district court to certify this? I believe we did address the possibility of that, but I'm not certain of that. I'm not certain of that. It is an open question. We believe that the law is sufficiently clear as addressed by West Virginia and as noted by this court. We referred the court to the Smith v. Animal Urgent Care decision, which noted specifically in a decision in 2000 that bodily injury, which is the defined term that triggers coverage under these policies, is based on the physical manifestation of harm. This court, the Fourth Circuit, in Ball v. Joy Technologies in 1991, concluded that mere exposure to chemicals was insufficient to establish bodily injury and stated the mere exposure of the plaintiffs to toxic chemicals does not provide the requisite physical injury to entitle the plaintiffs to recover for their emotional distress. And the court stated specifically that numerous courts have held that exposure to hazardous substances does not constitute a physical harm. That's the real issue here. The policies issued by Westfield, whether you consider from 1985 up to 1989 only or beyond, which is the one we raised in the DEC action from 1989 to 2001 for the claims or for the claims made policy and 89 to 2010 for the CGL policy, all of those require bodily injury during the policy period of coverage for coverage to be triggered. That language is clear. It's unambiguous. Courts have found it to be unambiguous, and we've noted those cases. Here, the district court reached a different conclusion. It didn't disagree with our position on the 2000 policies, 89 to 2001, 89 to 2010 claims made in CGL policies because the court chose not to get to them at all. But in adopting a continuous trigger, the court implicated coverage under every one of those, yet then decided that coverage under those policies that it had implicated by its ruling was moot because it found the duty to defend under the 85 to 89 policy. We believe that that is a clearly erroneous decision and that the court at a minimum should have ruled on the additional coverage issues. Before your time runs out, I wanted to ask you about the other party here, the local insurance company and agent. I think they're referred to as Padden. They filed a motion to dismiss because you've included them in the appeal. And I wanted to give you an opportunity to respond to that. Frankly, I have some difficulty seeing what your standing is as regards to them as a third party, how you're in any way injured by the grant of summary judgment to them. We were not overly concerned about the agency defendants, and we did not proceed with any claim against them in the underlying matter. They were third party there. The problem was that in the judgment order that was entered, there were actually two judgments. If you haven't made a claim against them, how can you appeal the grant of summary judgment to them? Well, I believe you have the right to file an appeal when the judgment is entered and is based upon, as it states expressly, the finding of coverage against Westfield. That is in the judgment order. It didn't need to be, but it was in the judgment order that the district court entered, granting summary judgment to the agency defendants, as I refer to them, the Riggle and Padden entities, and against Cicero Tank Works. We did not want to be in a position where we appeal the coverage judgment order as between Cicero Tank Works and Westfield, but yet there was this other judgment order that stated that coverage applied under the Westfield policies. If that judgment order is actually going to be a judgment that binds Westfield to a finding of coverage under these policies, Westfield certainly has standing in this case to have raised that on appeal as we did with respect to Cicero Tank Works. I see that my time is up. Thank you very much. You've got some rebuttal time. Mr. Orth, we'll be glad to hear from you. Thank you, Your Honor. May it please the court, I'm Ryan Orth, and I have the pleasure of representing Cicero Tank Works, which is also commonly referred to as STW. As Mr. Kessler indicated, STW was sued in these underlying actions. They manufacture these storage tanks in the chemical industry, and unfortunately, they became a venue-giving defendant in these underlying actions. To jump into the main points here, the district court was correct in applying the continuous trigger and relying upon the West Virginia Circuit Court opinions adopting the continuous trigger and rejecting the case law relied upon by Westfield, including the state auto and the ball case. Notably, the state auto and the ball case are distinguishable on the basis that in state auto, the determination was made because manifestation actually ruled in favor of there being coverage under the manifestation trigger that comported with the reasonable expectations of the parties. In ball, the West Virginia Supreme Court of Appeals actually rejected ball as an incorrect statement of law and found that exposure without manifestation does constitute bodily injury. While this was in the terms of medical monitoring, it is highly indicative of how the state Supreme Court would rule on this issue. So, cut to the chase, Judge Stajic brought it up in terms of certification. Why wouldn't we certify this question to the West Virginia Court of Appeals? Well, first, Westfield chose its form. They did not choose to put this in state court. And, you know, the implications of certification to the state Supreme Court would, you know, incur substantial expense, more delay for this action that was initiated in 2018. And the closeness of the question, given the distinguishing factors of the case law relied upon by Westfield, the two circuit court cases in West Virginia and the Bauer case that rejected ball that was a state Supreme Court opinion in the medical monitoring context does adopt the continuous trigger. So, I think it's highly indicative of how the state Supreme Court would rule on this issue. But you do see the conundrum in the state court has ruled in one way and the federal district court says manifestation. We're still in a predictive phase. I realize the delay and expense is there, but we've certainly done it in other cases. Sometimes we even greater delay. And this is a very key issue. West Virginia has, you know, as in other states, tremendous cases that come before them dealing with issues of this type. It's an issue that feels like it just needs to move beyond prediction to having something definitive from the court. It seems to me that would that may well settle this matter. Well, I think I think another key point here is that Westfield never raised this issue at the district court level. Their position has only changed now district court has ruled against them on this issue. I think that's fair enough and I'm not. I don't even know it now if we bring it up. Is it possible for us to ask for certification and then send it back to the district court to answer that question in the 1st instance. That may well be something to deal with, but whatever it is could be fairly definitive on it. And it seems to me this ought to be settled. And I take your point about your answer blaming it on the other side, but the district court had come out the other way. You would be up here telling us it should be certified. Wouldn't you? Well, our position at the district court level was that the case law was indicative of how the state Supreme Court would rule on the issue. And another point is on the question wasn't clear. I said, if you had lost at the district court, and you were on appeal here, you were appellant. Wouldn't you be suggesting that the case be certified. I presume that is a good point. But, you know, of course, that is a hypothetical. And another point that I want to make. It's a pretty straightforward question. It may be difficult for you to answer, but it would seem clear that if you had lost, it would certainly be as a representative person. You probably should ask for that point, thinking that West Virginia Supreme Court would go the other way in your favor. That's all that's going to is not trying to put you in a position of, you know, admitting one way or the other. It may be hypothetical, but that's a realistic hypothetical situation. Just a simple question. If you had lost, would you have gone there? I don't think you're saying, yeah, I wouldn't. I don't think you're losing anything you're saying. You probably add a little candor to the conversation. Yes, that is correct. And I think another point on this issue is that under the specifics to this case, the continuous trigger is applicable is more applicable because it conforts with the expectations of the parties that there would be coverage for these types of claims. And the application of the manifestation trigger would convert the CGL policy into a claims made policy, which is not what the parties had contracted for. So how do you get the expectations? I understand you're going to tell me your expectations, but what about the expectations of the other side? Well, I think because the parties also had the claims made policy from 89 to 2001, in addition to a CGL policy. I think that makes that distinction there. I thought I said I wasn't going to consider those policies. That is correct, Your Honor. And that was our position was that once the coverage determination was made under the pre-1980 policies, that STW was able to uncover after an exhaustive search during discovery that if coverage was found under those policies, there was no longer a live controversy under the 89 to 2010. So you agree with the district court's ruling that it would be not right or moot, I think was the district court's term, to consider the 89 to later policies, but you want us to consider them with respect to this other issue. Well, Your Honor, I think that I was using that more as an example of the difference between the occurrence based CGL policy and a claims made policy to the extent that application of the manifestation trigger here would convert STW's CGL policy to a claims made policy. So the opposing counsel says that the district court was wrong to consider the pre-89 policies and it should have considered the 89 and later years policies. So why don't you tell us why you disagree with opposing counsel? Well, under the pre-89 policies, coverage was very clear once the continuous trigger was applied because it did not contain the exclusions that Westfield relied upon in the later policies. Westfield has not argued that those policies are not indicative that they do not provide coverage. They've only argued that the pre-89 policies aren't complete or that the 88 to 89 renewal policies are not evidence of what the 85 to 88 original policies were. They haven't argued that coverage doesn't exist under those policies. Once that coverage determination was made, there was no longer any right controversy as to the 89 to 2010 and all of that is based on mere hypotheticals that may never occur. It'll take a case where exposure is alleged outside of this 85 to 89 period and within the 89 to 2010 period for this issue to be right for a court to consider. Now, opposing counsel says, as I understand it, we shouldn't consider the pre-89 policies at all. So can you speak directly to why you disagree with that? Well, the policies were properly before the court to consider. To not consider those policies would have provided incomplete relief. And as far as the completeness of those policies go, Westfield was not able to point to any material terms that were missing, any material differences. I believe the only potential portions of the policy that may not have been able to be produced pertain to automobile coverage and then just common policy declarations that have nothing to do with the issue of coverage under those policies, especially with regard to these latent disease cases. And under those policies, STW was able to prove all of the material terms and conditions. The district court correctly found that there were no applicable exclusions under the pre-1989 policies. And they correctly found that coverage was triggered when applying the continuous trigger under those policies. And there, the controversy, the relief sought by Westfield and the declaratory judgment action was whether there was a duty of coverage to STW for the underlying matters. Once coverage was found under the pre-89 policies, that was accomplished. And Westfield has devoted some time in their brief to the merits of the post-89 coverage. And given that the district court did not address those issues, that's really not an issue in the appeal. Once the district court found that those issues were moot and would amount to nothing more than an advisory opinion. Additionally, Westfield has, in terms of arguing the continuing, the continuous versus the manifestation trigger, Westfield's issues with the Wheeling pit case in US Silica go to the issue of whether the bodily injury was simultaneous to the exposure. And that goes into the merits of the underlying applications or the underlying allegations. Whereas for a coverage determination, it only matters that the allegations and the underlying actions are reasonably susceptible to an interpretation. And given that each of the underlying plaintiffs have alleged that the exposure occurred, causing the bodily injury, they are reasonably susceptible to that. And the veracity of whether that is true or not, whether STW did anything negligent, STW would agree with Westfield that STW did not commit a negligent act. However, the claims of the underlying allegations bring that into play. And, you know, under the eight corners rule, there is no consideration of the underlying facts. If there are no further questions, I believe that concludes my argument. What about the appeal as to regal and patent? What's your position on that? The district court's ruling was contingent. By finding that coverage existed under the Westfield policies, that meant that there could not have been negligent procurement on behalf of the agency. And so by making that finding, it made STW's allegations against regal and patent, they weren't right because there was a finding of coverage. The claims initially were based that if there was not proper coverage, that fell on regal and patent. Given that if this were to be remanded and a decision was to be overturned, then claims against regal and patent could then become ripe. So do you agree or disagree that we should grant the motion to dismiss the appeal as to regal and patent? Well, I think it all. I guess the fact that they are involved in the appeal, they really don't have any arguments in the appeal that it's merely contingent based upon the way that the district court ruled. And that from STW's perspective is that as long as it would not impact STW's claims against regal and patent in the event that this decision was overturned, STW has no objection to regal and patent being dismissed from the appeal. Thank you, Mr. Orth. Mr. Lunsford, you have a minute. Thank you. May it please the court, I am David Lunsford and I represent the defendants, I believe, Mr. Edwards, Mrs. Price, and Mr. and Mrs. Steele, who have brought separate tort actions against Sistersville Tank Works. As a result of their or their spouse's development of certain cancers, as the court saw in the briefings, my clients took no position on the merits of this declaratory action when it was pending before the district court. And likewise, took no position on the merits of this appeal in the response brief filed with their co-defendant, Sistersville Tank Works. As such, my clients are taking no position on the merits of this appeal today. All right, Mr. Pierce, you have two minutes. May it please the court. Good morning, Your Honors. My name is Zach Piers and I represent regal and patent and David C. Patton on this appeal. The court's already hinted at and asked specifically both Westfield and Sistersville Tank Works their position on the motion to dismiss. And really, the only reason I'm here to argue this morning before you is to reiterate our position on the motion to dismiss that both the patent defendants are not proper parties to appeal. The only party that brought claims against the patent defendants was Sistersville Tank Works. Westfield did not assert any direct claims and they've stated as such here. When the motion for summary judgment was granted against or it was granted in favor of the patent defendants, there was not only not only was the one of the basis that Sistersville Tank Works was afforded coverage under the Westfield policies, but there is also the fact that Travelers Insurance was also providing Sistersville Tank Works a defense in the underlying action, which was not related to the decision as it relates to Westfield's coverage. And so the reality was the district court's decision determined that there were no damages that Sistersville Tank Works could prove in the underlying action. The other issue is, is that Sistersville Tank Works also argued before the district court even was found under the Westfield policy that they still had sustained damages. The court rejected that argument. That was not contingent upon the coverage. And so the Sistersville Tank Works defendants essentially sought to afford other theories of liability separate and apart from the coverage and the court rejected those arguments. But if we should reverse, wouldn't that have an effect on you? I'm sorry, Your Honor. If we should reverse the district court, wouldn't that have an effect on you? Why would we grant your motion to get out of the case now? I would think that would be to your disadvantage. Well, Your Honor, I don't believe we should have been a party at all, which is why we filed the motion when we did at the beginning of the appeal. And we don't believe that any of this is because there is no appeal as it relates directly to the decision. Since Westfield has no standing to assert the claim and Sistersville Tank Works did not file an appeal against us. We believe that the motion, the decision and order, which separately indicates, and I would refer you to the actual order from the court. It ordered the clerk to enter a judgment separately in favor of Sistersville Tank Works and in favor of Regal and Paddock. And based upon that order from the court, we believe that the separate order that was supposed to be put in place by Regal and Paddock stands as long as there is no direct appeal to that order by Sistersville Tank Works, which there has not been. All right. Thank you very much, counsel. Thank you, Your Honor. Mr. Kessner, you have some rebuttal time. Thank you. I want to speak just briefly on to the issue of the possibility of certifying the question. The court's comments make clear this is an important issue. And I think it's a significant note when the court said, haven't we reached the point where we should move beyond prediction? Obviously, yes. I don't believe there's a waiver of a request or a suggestion that the court might want to consider certifying this issue merely because that wasn't presented squarely before the district court. I'll refer the court to the case of Columbia Casualty v. Westfield Insurance Company, which was a coverage case. There's no waiver. Yes. So, I believe that the court can consider doing that if it elects to do so, of course, to your discretion. Counsel for SDW has argued that to adopt a manifestation trigger is essentially a conversion of CDL policies into claims-made policies. That is simply not accurate. If we go back and we look at the Wheeling-Pittsburgh case and we look at the U.S. Silica case, in both of those cases, the court found that there was injury and damage that occurred upon the environmental contamination of the property instantly when that started and continuously, or to exposure to silica instantly when that happened and continuously. There's no requirement that when that injury or damage occurs, that a claim for that be made within the policy period. It is only required that the injury occur during the body period. That's what the policy says. Counsel has attempted to distinguish and say that the Ball v. Julie Technology case has been repudiated by the Western Virginia Supreme Court in Bauer, but that is simply not true. The Bauer case doesn't adopt a continuous trigger. The Bauer case simply approved of actions for medical monitoring. But in doing that, in the exposure context, the court was specific in noting that what it was addressing was an economic harm, not a physical harm. Economic harm under West Virginia law does not fall within the definition of bodily injury. Our Supreme Court, in the case of Alouise v. Nationwide, addressed that specifically, noting that economic harm does not represent bodily injury under these types of policies. That case dealt with a homeowner's policy, but the policy language and the circumstances are the same here under a CGL or an umbrella or excess policy. Can I ask you a question about the 1989 to 2010 policy? You seem to... You aren't making a claim with respect to that? I'm just not very clear. I would think that you would want cumulative coverage. I'm not sure I understand the court's question. The court's continuous trigger approach implicates all those policies, but we believe under the 1989 to 2010 CGL policy, coverage is clearly excluded. Each of those policies absolutely expressly excludes coverage for product-completed operations exposure. Each of those policies also requires bodily injury to have occurred and existed or property damage during the policy term. So, we have that same issue of manifestation of the physical harm or damage during the policy term, which is not present here. It's clear, and SDW hasn't even presented the court with any colorful arguments, that coverage under either that CGL policy from 1989 to 2010 or the separate product-completed operations claims-made policy from 89 to 2001, those policies simply provide no coverage for these claims. Counsel mistakenly said, however, that we don't dispute that coverage would apply under the 85 to 89 policies. Again, we raise the issue that the court below, the district court, didn't have complete policies. But regardless, those policies would not apply to provide coverage here for the same issue and for the same reason that we've addressed on the CGL policy from 89 to 2010. And that is, those policies expressly require bodily injury during the policy period. So, we get to this same continuous trigger manifestation, but really the underlying issue is, when does the bodily injury occur? You can have 10,000 people work in an environment or walk through an environment where there is allegedly benzene fumes. And has every one of those people suffered a bodily injury? And the answer to that is absolutely clearly no. Before you get off from a textualist perspective, if you look at that policy, it has language. Policy applies to bodily injury, which occurs during the policy period. It says occurs, not manifests. If we follow that approach, how does that support you? And that's the argument that I'm making. For the bodily injury to occur, it has to be present in some way that can be identified, that can be measured, that can be observed, that can be detected. Otherwise, it has not occurred. As this court noted, again, in the Ball v. Joy Technologies case, mere exposure does not constitute bodily injury. But it says occurs, not manifests. I agree, but manifest is perhaps a misleading term in the sense of, in my mind, it means visualize. But I think the broader definition of it, as noted in the two cases from state court that the district court relied on, it's sufficient if the injury or harm is detectable, measurable, confirmationable, as opposed to undetectable. Thank you. All right, thank you, counsel. We appreciate the arguments from all the attorneys in this case. As you know, our custom in the Fourth Circuit is to come down in the well-recorded and greet counsel after argument. We're still COVID-restricted in that regards. We'll wish you the best virtually and hope that you can return in the future when we're able to resume our normal and customary practice. So with that, we'll be at ease here momentarily while counsel for the second case comes up to their respective desks. And our notes indicate that we have some students here from the University of Virginia Law School, which is the alma mater of Judge Monson and myself. And we're glad to have you here today and hope you'll find this interesting.
judges: G. Steven Agee, James Andrew Wynn, Diana Gribbon Motz